Joan Marie Chardonnay-Singleton
706 Sail Fish Quay
Chesapeake, Virginia 23320
(757) 436-1425
(321) 201-9650 (cell)
3747chardonnay@gmail.com
*Pro Se* Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN MARIE CHARDONNAY-SINGLETON, | Civil Action No. |
| Plaintiff, | |
| v. | |
| TERRI DENISE BROOKS, TIANNA B. SINGLETON (BROOKS), UNITED STATES DEPARTMENT OF THE THE NAVY, and JOHN DOES 1-10, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff Joan Marie Chardonnay-Singleton ("Plaintiff"), *pro se*, by way of Complaint against Defendants Terri Denise Brooks ("Terri"), Tianna B. Singleton (Brooks) ("Tianna"), United States Department of the Navy ("the Navy"), and John Does 1-10 ("Does"), states and alleges as follows:

**ESSENCE OF THE DISPUTE**

1.      Plaintiff is the widow of deceased Navy BMC Kevin Singleton ("Kevin") and the original and intended beneficiary of Kevin's $400,000.00 Servicemen's Group Life Insurance ("SGLI") Policy, which was maintained by the Navy and administered by the Prudential Insurance Company of America ("Prudential") pursuant to a contract with the United States Department of Veterans Affairs ("the VA"). During the last year of Kevin's life, while his body was ravaged

with cancer, Defendants Terri and her daughter, Tianna, forged an SGLI Election and Certificate form in Kevin's name, fraudulently designated Tianna as the sole beneficiary of Kevin's SGLI policy, and caused same to be submitted to the Navy, unbeknownst to Plaintiff or Kevin. Notwithstanding the Navy's statutory obligation, under 38 U.S.C. § 1967(f)(3), to "notify the member's spouse, in writing," of a beneficiary change designating "any person other than the child or spouse of the member" (which Tianna is not), Plaintiff did not receive any such notice. When Kevin died, the Navy forwarded the forged SGLI Election and Certificate form to Prudential, who in turn paid the $400,000.00 policy benefit to Tianna, again unbeknownst to Plaintiff. Despite diligent efforts to discover what happened with Kevin's SGLI policy benefit, Plaintiff did not learn or discover the forgery until years later. And despite years of diligent efforts to redress the fraud with the Navy and other agencies and authorities, no action was taken by or against any of the responsible parties. This lawsuit follows.

## PARTIES

2.  Plaintiff is a Virginia resident with an address of 706 Sail Fist Quay, Chesapeake, Virginia 23320.

3.  Upon information and belief, Terri is a New Jersey resident with an address of 229 Filbert Street, Wenonah, New Jersey 08090.

4.  Upon information and belief, Tianna is a Pennsylvania resident with an address of 3901 Conshohocken Avenue, Apartment 1205, Philadelphia, Pennsylvania 19131.

5.  Upon information and belief, the Navy is a military department of the United States Department of Defense headed by the Secretary of the Navy, the Honorable Carlos Del Toro, with an address of Office of the Secretary of the Navy, 1000 Navy Pentagon, Washington, DC 20350.

6. Upon information and belief, Does are individuals, agencies, or entities who, together with Terri, Tianna, and the Navy, are liable to Plaintiff under the claims stated herein and whose identities are presently unknown to Plaintiff.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of the claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as a claim arises under 38 U.S.C. § 1965, *et seq.*

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Terri resides in New Jersey, a substantial part of the events or omissions giving rise to the claims occurred in New Jersey, and/or a substantial part of the property that is the subject of the action is situated in New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

A. **Plaintiff and Kevin's Marriage and the Original SGLI Designation**

9. Kevin enlisted in the Navy in or about 1987.

10. Plaintiff and Kevin also married in or about 1987.

11. Plaintiff and Kevin remained married throughout Kevin's life.

12. At all relevant times, the Navy knew Plaintiff and Kevin were married and knew Plaintiff's address and contact information.

13. SGLI is a low-cost life insurance offered to certain categories of servicemembers, including active-duty servicemembers, through the VA.

14. Upon information and belief, at all relevant times, Prudential administered the SGLI coverage offered to such servicemembers through the VA.

15. Upon information and belief, the Navy is responsible for the collection and maintenance of the records and documents relating to the SGLI policies held by its various members.

16. As an active-duty member of the Navy, Kevin qualified for SGLI coverage and obtained same in or about 1993 ("the SGLI Policy").

17. Coincident with Kevin's obtaining the SGLI Policy, Kevin signed and submitted to the Navy an SGLI Election and Certificate form ("Form SGLV 8286") designating Plaintiff, his wife, as the primary beneficiary of 100% of the SGLI Policy.

18. The original Form SGLV 8286 also identified Kevin's father, Stanley Sidney Singleton, as the contingent/secondary beneficiary of 100% of the SGLI Policy.

19. Through the remainder of his life, Kevin intended that Plaintiff remain and be the primary beneficiary of 100% of the SGLI Policy.

**B.     Plaintiff and Kevin's Daughter**

20. Plaintiff and Kevin had one child, a daughter named Taje Elora Singleton ("Taje Elora"), born in 1990.

21. Due to serious health complications during Plaintiff's pregnancy, Taje Elora sustained brain damage and was born almost five months premature.

22. As a result of her brain damage, Taje Elora has been diagnosed with severe mental disabilities since her infancy.

23. Due in part to Taje Elora's special needs, Plaintiff has primarily cared for her throughout her life and been unable to pursue a career of her own or earn any income.

24. Accordingly, Plaintiff and Taje Elora were entirely dependent on Kevin's salary and benefits throughout his life, and she continues to depend on those benefits to this day.

C. **Kevin's Extramarital Affair**

25. While Taje Elora was still an infant, Kevin had an extramarital affair with Defendant Terri.

26. When Plaintiff confronted Kevin about the affair, Kevin became physically and sexually violent.

27. Navy personnel overheard that domestic violence incident, interceded, forcibly removed Kevin from their marital residence, and placed him in separate housing.

28. Plaintiff and Kevin never lived together again after that incident of domestic abuse.

29. Nevertheless, Plaintiff and Kevin agreed that it was important that he remain in Taje Elora's life and that they remain a family, and that Kevin continue to provide for Plaintiff and Taje Elora financially.

30. In accordance with their shared wishes, Kevin remained a loving and supportive father to Taje Elora throughout the remainder of his life; regularly spent time with her, spoke with her, spoke with Plaintiff about her, and provided for her and Plaintiff financially.

31. Although Plaintiff and Taje Elora lived separately from Kevin, they remained known to and reachable by the Navy, which continued to maintain records identifying Plaintiff as Kevin's spouse and listing her current address.

32. Upon information and belief, the Navy updated its records each time Plaintiff and Taje Elora changed their address.

33. In particular, the Navy was aware that, in or about the mid-1990s, Plaintiff and Taje Elora moved to an apartment in Orlando, Florida, where they resided throughout the remainder of Kevin's life.

34. Over the next two decades, Plaintiff and Taje Elora received numerous documents from the Navy through the mail at their Orlando address.

35. Upon information and belief, from the time of their affair in or about 1992, until approximately 2005, Kevin and Defendant Terri remained in contact with one another but never dated or lived together.

36. Upon information and belief, during that time Terri had several children, including Defendant Tianna, but Kevin was not the biological father of any of them.

37. Upon information and belief, Kevin never acknowledged that he was the father of Tianna or any of Terri's other children.

38. Upon information and belief, Kevin was never judicially ordered to contribute to Tianna's support, or that of any of Terri's other children, and in fact never offered or provided any such financial support.

39. In or about 2005, Kevin pronounced to Plaintiff that he had learned some disturbing information about Terri and would no longer associate with her.

40. Upon information and belief, Kevin ended his platonic relationship with Terry in 2005, and the two never saw each other again.

**D.   Plaintiff and Kevin's Health Problems**

41. In or about 2005, Plaintiff's eyesight deteriorated to the point that she became legally blind.

42. In or about 2007, Plaintiff was diagnosed with Multiple Sclerosis.

43. As a result of her blindness and Multiple Sclerosis, since 2007 Plaintiff has been confined to a wheelchair and made dependent on others for many basic living faculties.

44. After Plaintiff was confined to a wheelchair, Kevin was diagnosed with Multiple Myeloma, a cancer of certain blood cells.

45. As Kevin's cancer worsened, he became functionally debilitated, so much so that his treating oncologist recommended against his making any legal or financial decisions on his own.

### E. The Subject Conspiracy to Defraud

46. Upon information and belief, Terri and Tianna learned of Plaintiff's disabilities, as well as Kevin's cancer diagnosis and failing health, and devised a plan to defraud Plaintiff of several assets Kevin intended to bequeath to her and Taje Elora.

47. Upon information and belief, the SGLI Policy was among the various items of which Terri and Tianna conspired to defraud Plaintiff.

48. In furtherance of that conspiracy, on or about April 26, 2014, while Kevin was acutely suffering from cancer and functionally debilitated, Terry and Tianna submitted, or caused to be submitted, to the Navy a new Form SGLV 8286.

49. Specifically, the new Form SGLV 8286 was submitted to the Navy Operations Support Center located in Fort Dix, New Jersey.

50. Upon information and belief, this new Form SGLV 8286 designated Tianna as the sole beneficiary of Kevin's $400,000.00 SGLI policy.

51. Unlike Kevin's original Form SGLV 8286, this new Form SGLV 8286 did not designate any contingent/secondary beneficiary of the SGLI Policy and instead had "NONE" handwritten in capital letters in the field where such a beneficiary would be designated.

52. The handwriting on the new Form SGLV 8286 is clearly <u>not</u> Kevin's handwriting.

53. Kevin did <u>not</u> know of – let alone intend, authorize, or participate in – the submission of the new Form SGLV 8286 or its designation of a beneficiary other than Plaintiff.

54. The designation of a beneficiary other than Plaintiff contradicted Kevin's numerous and repeated promises to Plaintiff in contemplation of his own death, including ones made after his cancer diagnosis.

55. Plaintiff and Kevin did not have any "fight" or "falling out" after the last such promise he made to her, and Plaintiff had every expectation that substantially all of Kevin's estate and Navy benefits, including the $400,000.00 SGLI Policy, would pass to her or Taje Elora upon Kevin's death.

56. Kevin <u>never</u> mentioned having another daughter, let alone any intent to leave the $400,000.00 SGLI Policy, or any portion of his estate, to any such nonexistent daughter.

F.  **The Navy's Violation of its Statutory Duty to Notify**

57. Title 38, Chapter 19, Subchapter III of the United States Code governs the administration of SGLI policies. 38 <u>U.S.C.</u> §§ 1965 *et seq.*

58. 38 <u>U.S.C.</u> § 1967(f)(3) provides, in relevant part, as follows: "In the case of a member who is married and who is insured under this section, if the member makes a designation … of any person other than the spouse or a child of the member as the beneficiary of the member for any amount of insurance under this subchapter, the Secretary concerned <u>shall notify the member's spouse, in writing, that such a beneficiary designation has been made by the member</u>."

59. Upon information and belief, the "Secretary concerned" with respect to the SGLI Policy was the Secretary of the Navy.

60. 38 <u>U.S.C.</u> § 1965 defines "child" to mean "a legitimate child, a legally adopted child, an illegitimate child as to the mother, or an illegitimate child as to the alleged father, <u>only if</u>

(A) he acknowledged the child in writing signed by him; or (B) he has been judicially ordered to contribute to the child's support; or (C) he has been, before his death, judicially decreed to be the father of such child; or (D) proof of paternity is established by a certified copy of the public record of birth or church record of baptism showing that the insured was the informant and was named as father of the child; or (E) proof of paternity is established from service department or other public records, such as school or welfare agencies, which show that with his knowledge the insured was named as the father of the child."

61. Tianna is not Kevin's child, as that word is defined in 38 U.S.C. § 1965.

62. Notwithstanding that fact, upon receipt of the new Form SGLV 8286, the Secretary of the Navy did not issue the written notice prescribed 38 U.S.C. § 1967(f)(3) to Plaintiff, as Kevin's spouse.

63. As a result, Plaintiff never learned of the fraudulent change in beneficiary designation perpetrated by Terri and Tianna, and therefore had no opportunity to challenge the authenticity of the forged Form SGLV 8286, prior to Kevin's death and the paying out of the $400,000.00 SGLI Policy benefit.

64. On or about December 26, 2014, approximately eight months after Terri and Tianna submitted the forged Form SGLV 8286, Kevin suffered a stroke brought on respiratory failure, and died.

65. In furtherance of Terri and Tianna's conspiracy, Tianna signed Kevin's death certificate, falsely identified herself as Kevin's "daughter," and left blank the field for "surviving spouse's name," thereby concealing Plaintiff's identity as Kevin's surviving spouse.

66. On or about March 12, 2015, the Director of the Navy's Casualty Assistance Division submitted to Prudential the forged Form SGLV 8286 and the death certificate signed by

9

Tianna while omitting any reference to Plaintiff's being Kevin's surviving spouse, among other documents relevant to Kevin's service in the Navy.

67. In turn, on or about April 3, 2015, Prudential issued to Tianna a check in the amount of $400,541.11, representing the full proceeds of the SGLI Policy.

68. Despite diligent inquiries, Plaintiff did not learn what happened with the SGLI Policy until November 20, 2016.

69. Since November 20, 2016, Plaintiff has formally and informally implored the Navy, the Naval Criminal Investigative Service, the Bureau of the Naval Personnel Inspector General, and the Department of Veterans Affairs Office of Inspector General to investigate the fraudulent conversion of Kevin's SGLI Policy benefit by Terri and Tianna.

70. Upon information and belief, in each case, the supposed "investigation" initiated in response to Plaintiff's complaint, if any, consisted entirely of confirming the existence of the new Form SGLV 8286 designating Tianna as sole beneficiary, without any sort of handwriting analysis, any interviews of the Navy personnel who administered the SGLI Policy or who received or processed the forged Form SGLV 8286, or any interview of Tianna.

71. Upon information and belief, while Plaintiff has repeatedly attempted to redress the fraud with the various authorities responsible for doing so, Terri and Tianna have spent and depleted the entire proceeds of the SGLI Policy benefit.

72. As a result of Defendants Terry and Tianna's conspiracy to defraud Plaintiff, as well as the Navy's violation of 38 U.S.C. § 1967(f)(3) by failing to provide Plaintiff written notice of the fraudulent change in beneficiary, and thus depriving her any opportunity to contest and correct same prior to Kevin's death and the $400,000.00 SGLI Policy benefit being erroneously paid to Tianna, Plaintiff has suffered, and continues to suffer, damages.

## COUNT ONE
### (Conspiracy to Defraud)

73. Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

74. Plaintiff and Kevin married in or about 1987 and remained married throughout the remainder of Kevin's life.

75. Plaintiff was the original designated beneficiary of the SGLI Policy, and Plaintiff remained the intended beneficiary of the SGLI Policy throughout the remainder of Kevin's life.

76. Upon learning of Plaintiff's disabilities and Kevin's cancer diagnosis and failing health, Defendants Terri and Tianna conspired to defraud Plaintiff of numerous of Kevin's assets, including the SGLI Policy.

77. In furtherance of that conspiracy, on or about April 26, 2014, Terri and Tianna filled out a Form SGLV 8286 which designated Tianna as the sole beneficiary of the SGLI Policy, forged Kevin's signature on same, and submitted same to the Navy.

78. Terri and Tianna submitted the forged Form SGLV 8286 without Kevin's knowledge, authorization, or consent.

79. On or about December 26, 2014, Kevin died.

80. In furtherance of their conspiracy, Tianna filled out Kevin's death certificate, falsely identified herself as his daughter, and fraudulently concealed Plaintiff's identity as his surviving spouse by leaving blank the space for surviving spouse.

81. In reliance on the forged Form SGLV 8286 and the materially false death certificate, on or about April 3, 2015, Prudential issued to Tianna a check in the amount of $400,541.11 representing the full proceeds of the SGLI Policy benefit.

82. As a direct and proximate result of Defendants Terri and Tianna's conspiracy to defraud, Plaintiff has suffered, and is continuing to suffer, damages.

## COUNT TWO
### (Violation of 38 U.S.C. § 1967(f)(3))

83. Plaintiff incorporates by reference the allegations set forth in all the preceding Paragraphs as if set forth fully herein.

84. Plaintiff and Kevin married in or about 1987 and remained married throughout the remainder of Kevin's life.

85. Plaintiff was the original designated beneficiary of the SGLI Policy, and Plaintiff remained the intended beneficiary of the SGLI Policy throughout the remainder of Kevin's life.

86. Title 38, Chapter 19, Subchapter III of the United States Code governs the administration of SGLI policies. 38 U.S.C. §§ 1965 *et seq.*

87. 38 U.S.C. § 1967(f)(3) provides, in relevant part: "In the case of a member who is married and who is insured under this section, if the member makes a designation … of any person other than the spouse or a child of the member as the beneficiary of the member for any amount of insurance under this subchapter, the Secretary concerned <u>shall notify the member's spouse, in writing, that such a beneficiary designation has been made by the member</u>."

88. Upon information and belief, the "Secretary concerned" with respect to the SGLI Policy was the Secretary of the Navy."

89. On or about April 26, 2014, Defendants Terri and Tianna submitted to the Navy the forged Form SGLV 8286 designating Tianna as the sole beneficiary of the SGLI Policy.

90. Tianna is <u>not</u> Kevin's biological daughter and, in any event, does not meet the definition of "child" as that word is defined in 38 U.S.C. § 1965.

91. Because Tianna is not Kevin's "child," as that word is defined in 38 U.S.C. § 1965, the Secretary of the Navy was obligated, pursuant to 38 U.S.C. § 1967(f)(3), to notify Plaintiff, in writing, of the forged Form SGLV 8286 designating Tianna as the sole beneficiary of the SGLI Policy submitted on or about April 26, 2014.

92. The Secretary of the Navy failed to provide Plaintiff the written notice prescribed by 38 U.S.C. § 1967(f)(3).

93. As a result of the Secretary of the Navy's failure to provide Plaintiff the written notice prescribed by 38 U.S.C. § 1967(f)(3), Plaintiff did not learn of the change in beneficiary designation until long after the $400,000.00 SGLI Policy benefit was paid to Tianna.

94. The Navy's violation of its statutory obligation to notify Plaintiff deprived Plaintiff of any opportunity to challenge the fraudulent change in beneficiary designation or to alert Kevin of same so that he could submit a corrective Form SGLV 8286 redesignating Plaintiff as the sole beneficiary of the SGLI Policy, as was his intent.

95. On or about December 26, 2014, Kevin died.

96. Despite knowing that Plaintiff was Kevin's wife and the original designated beneficiary of the SGLI Policy, and despite knowing where Plaintiff lived and how to contact her, and despite knowing that Tianna was not Kevin's "child," on or about March 12, 2015, the Navy submitted to Prudential the forged Form SGLV 8286 without first contacting Plaintiff or initiating any kind of investigation as to the authenticity of the forged Form SGLV 8286 designating Tianna as the sole beneficiary of the SGLI Policy.

97. In reliance on the forged Form SGLV 8286, on or about April 3, 2015, Prudential issued to Tianna a check in the amount of $400,541.11, representing the full amount of the SGLI Policy benefit.

98. As a direct and foreseeable consequence of the Navy's failure to provide Plaintiff with the written notice mandated by 38 U.S.C. § 1967(f)(3), Plaintiff has suffered, and continues to suffer, damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for the full value of the SGLI Policy, *i.e.*, $400,541.11, plus interest dating back to April 3, 2015, punitive damages, costs, reasonable attorneys' fees, and any other relief deemed just and owing.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues.

> Joan Marie Chardonnay-Singleton
> 706 Sail Fish Quay
> Chesapeake, Virginia 23320
> (757) 436-1425
> (321) 201-9650 (cell)
> 3747chardonnay@gmail.com
> *Pro Se* Plaintiff

*Joan Marie Chardonnay-Singleton*
JOAN MARIE CHARDONNAY-SINGLETON

Dated: November 17, 2021