<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOAN MARIE CHARDONNAY-SINGLETON, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | Civil Action<br>No. 21-20069 (KMW-SAK) |
| v. | |
| TERRI DENISE BROOKS, *et al.*, | **OPINION** |
| Defendants. | |

APPEARANCES:

JOSEPH NICOLA COTILLETTA, ESQ.
LABATON KELLER SUCHAROW LLP
140 BROADWAY, FL 34
NEW YORK, NY 10005

 *Counsel for Plaintiff Joan Marie Chardonnay-Singleton*

JEFFREY AARON MALATESTA, ESQ.
MATTLEMAN WEINROTH & MILLER PC
401 ROUTE 70 EAST, SUITE 100
CHERRY HILL, NJ 08034

 *Counsel for Defendants Terri Denise Brooks and Tianna B. Singleton*

KEVIN JAMES MAGGIO, ESQ.
DOJ-USAO, CIVIL
401 MARKET STREET, P.O. BOX 2098
CAMDEN, NJ 08101

TASHA MARIE BRADT, ESQ.
DOJ-USAO, DNJ
CLARKSON S. FISHER FEDERAL BUILDING AND U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NJ 08608

 *Counsels for Defendant United States Department of the Navy*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Joan Marie Chardonnay Singleton ("Plaintiff") brings this action against Defendants Terri Denise Brooks and Tianna B. Singleton (Brooks) ("Brooks Defendants") and Defendant United States Department of the Navy ("Navy Defendant"). Plaintiff, the widow of Kevin Singleton, alleges that the Brooks Defendants interfered with her receipt of the Insured's Navy-sponsored life insurance policy, and that Navy Defendant failed to notify Plaintiff of the changes made to the insurance policy prior to the Insured's death, in violation of 38 U.S.C. §§ 1965, 1967 and Navy Defendant's own internal policies.

This matter comes before the Court on Brooks Defendants' Motion for Summary Judgment, (ECF No. 73), and Navy Defendant's Motion for Summary Judgment, (ECF No. 74). Plaintiff opposed both motions in one response, (ECF No. 78), and Navy Defendant replied. (ECF No. 80). Both Navy Defendant and Plaintiff filed Motions to Seal various exhibits related to their motions, (ECF Nos. 77, 81). For the reasons that follow, Brooks Defendants' Motion for Summary Judgment is **GRANTED**; Navy Defendant's Motion for Summary Judgment is **GRANTED**, and both Plaintiff's and Navy Defendant's Motions to Seal are **GRANTED**.[1]

## II.    BACKGROUND

Kevin Singleton married Plaintiff in September of 1987, just months after enlisting in the United States Navy. Navy Defendant's Statement of Material Facts ("ND SMF") ¶¶ 1, 11. In 1990, the couple had a daughter named Taje Elora Singleton. *Id.* ¶ 3. In 1993, Kevin Singleton designated Plaintiff, as his wife and as the principal beneficiary on his Navy-sponsored life insurance policy, Servicemembers' Group Life Insurance ("SGLI"). *Id.* ¶¶ 12-13. In 1995,

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

Plaintiff discovered that Kevin Singleton was having an affair on the Philadelphia Naval base with a woman named Terri Denise Brooks (Defendant Brooks), and in 1996, Defendant Brooks had a daughter named Tianna Brooke Singleton (Defendant Tianna Singleton) with Kevin Singleton who was listed as a Parent on her birth certificate. *Id.* ¶¶ 4-6. Kevin Singleton was honorably discharged from active duty in 1996. *Id.* ¶ 16. In 1997, after an incident at the marital home, Plaintiff and Kevin Singleton physically separated but remained married until his death: that year Kevin Singleton relocated to Philadelphia, Pennsylvania, and Plaintiff and Taje Singleton stayed in a townhome in Orlando, Florida, until 2016 where Kevin Singleton would visit periodically. *Id.* ¶¶ 2, 7-9.

In 2000, Kevin Singleton reenlisted in the United States Navy Reserves, and in 2002 he updated his SGLI beneficiary to include Plaintiff and listed her as his wife. *Id.* ¶¶ 17-21. However, in 2006, Kevin Singleton began making changes to his SGLI beneficiary designations, which lie at the heart of this suit.

In 2006, Kevin Singleton listed both Defendant Tianna Singleton and Taje Singleton as principal beneficiaries on his SGLI policy, listing them both as daughters. *Id.* ¶¶ 22-26. In 2012, Kevin Singleton made another change, listing Defendant Tianna Singleton and Heather Farrell as principal beneficiaries to his SGLI policy, listing them both as daughters. *Id.* ¶¶ 27-31. In 2013, Kevin Singleton changed the beneficiaries of his SGLI policy again, listing just Heather Farrell as his daughter and the principal beneficiary. *Id.* ¶¶ 32-35. In 2013, Kevin Singleton was diagnosed with multiple myeloma, and his condition continued to deteriorate into 2014. *See* Plaintiff's Response to Brooks Defendants' Statement of Material Facts ("PR BD SMF") ¶ 6; *see also* Plaintiff's Opposition at 5-6.

Finally, in April of 2014, Kevin Singleton changed the beneficiary designation for the final time, listing Defendant Tianna Singleton as his daughter and principal beneficiary to receive the proceeds of the SGLI policy. ND SMF ¶¶ 36-39. All of the beneficiary forms had a signature reflecting the name of Kevin Singleton. *Id.* ¶¶ 26, 31, 35, 39-40.[2] Further, his final change of beneficiary in 2014 was witnessed by Midshipman Keenan Lee Rogers at the Naval Operations Support Center at Fort Dix, New Jersey. *Id.* ¶ 40; *see also* Brooks Defendants' Statement of Material Facts ¶ 7.[3] In October of 2014, Kevin Singleton was approved to transfer to retired reserve status and on December 26, 2014, he died from a stroke. *Id.* ¶¶ 41-42.

In March of 2015, Navy Casualty Assistance Division verified Kevin Singleton's coverage and submitted the final SGLI Election Form, executed in April of 2014, designating Defendant Tianna Singleton as the principal beneficiary, and a copy of his death certificate to Prudential for processing. *Id.* ¶¶ 44-45. On April 3, 2015, Prudential paid the proceeds of the SGLI policy to Defendant Tianna Singleton. *Id.* ¶ 46. Plaintiff asserts that she did not discover that the SGLI policy had been disbursed until November of 2016, and that Navy Defendant did not notify her about any of the changes that occurred regarding the beneficiary designation of Kevin Singleton's SGLI policy pursuant to 38 U.S.C. § 1967(f)(3).

## III.    LEGAL STANDARD

### Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Plaintiff contends that Kevin Singleton's final 2014 beneficiary designation naming Defendant Tianna Singleton as the principal beneficiary was either forged by another person, or that Kevin Singleton was manipulated by Brooks Defendants to change his beneficiary form. *See* Opposition at 9, Ex. A. Chardonnay-Singleton Tr. at 70:14-24.
[3] Plaintiff disputes Midshipman Keenan Lee Rodgers' testimony regarding his memory of that day and his interactions with Kevin Singleton. *See* PR BD SMF ¶ 6.

56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

### A.  Brooks Defendants' Motion for Summary Judgment (ECF No. 73)

The Servicemember's General Life Insurance Act ("SGLIA"), 38 U.S.C. §§ 1965-1980A, was enacted by Congress to provide life insurance to members of the armed forces serving on active duty, in which Congress has set specific guidance as to how the proceeds from a policy should be paid. *See Calmon-Hess v. Harmer*, 904 F. Supp. 2d 388, 392 (D.N.J. 2012). Pursuant to 38 U.S.C. § 1970(a), the proceeds must be paid to the beneficiaries as the service member designated by a writing received prior to death, and if no beneficiary had been declared by the member, Congress provides for a specific sequence of inheritance. *Id.*[4] Congress also instituted an anti-attachment provision, protecting the proceeds from the claims of creditors, any kind of attachment, levy, or seizure "by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 1970(g). It is well established that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other . . . [t]here can be no doubt that Congress was aware of the breadth of the freedom of choice accorded to the service member of the SGLIA [and that] the controlling provisions of the SGLIA prevail over and displace inconsistent state law." *Prudential Ins. Co. of Am. v. Goski*, No. 12-6405, 2014 WL 2601974 at *3 (D.N.J. Jun. 10, 2014) (quoting *Ridgway v. Ridgway*, 454 U.S. 46, 55-56 (1981)) (internal quotations omitted). Since the inception of SGLIA, service members have been entitled to "designate any person, firm, corporation, or legal entity," as the beneficiary of their policy as long as such a designation is in writing, signed by the insured, and received by

---

[4] The statute provides for spousal notification if a married service member chooses to designate a beneficiary that is not the spouse or child, however the failure to notify a change in beneficiary designation outside of a spouse or child does not impact the validity of the designation. *See infra* section B; 38 U.S.C. § 1967(f)(3)-(4). The Court notes that there is an inherent incongruity in the fact that there is a requirement for notification and yet no avenue to contest a beneficiary change. The Court notes that such an avenue can only be established by Congress. *McNabb v. United States Dep't of the Army*, 623 Fed. App'x 870, 873 (9th Cir. 2015).

the appropriate office prior to the death of the service member insured. *Ridgway v. Ridgway*, 454 U.S. at 54 ("The pertinent House Report stated flatly: 'The serviceman may designate any person as a beneficiary,' H. R. Rep. No. 1003, 89th Cong., 1st Sess., 7 (1965), and the point was emphasized on the floor of the House by Representative Everett: 'This bill permits you to leave your insurance to your church, to your college, to your best friend. The beneficiary provision is wide open under this option.' 111 Cong. Rec. 24341 (1965).").

However, in *Ridgway*, the Supreme Court noted in dicta that the beneficiary and anti-attachment provisions of SIGLA could possibly be overcome by circumstances such as fraud, however such an "exception" is incredibly limited. *See Turnmire v. Turnmire*, No. 2021-12-165, 200 N.E.3d 604, 609-610 (Ohio Ct. App. 2022) (collecting cases). For example, *Ridgway*'s dicta "does not support an exception for lack of notice of a change in beneficiary occasioned by a service member's fraud,"[5] nor where the decedent violated State law, nor where the decedent defied an order from a State court. *Id.* (citing *McNabb v. United States Dep't of the Army*, 623 Fed. App'x 870, 873 (9th Cir. 2015); *Metropolitan Life Ins. Co. v. McMorris by McMorris*, 786 F.2d 379 (10th Cir. 1986); *Lewis v. Estate of Lewis*, 527 S.E.2d 340 (N.C. Ct. App. 2000)). Rather, a plaintiff "would need to prove either an extreme fact situation or that the proceeds were obtained through fraudulent or illegal means," such as where the beneficiary murdered the service member, or if the

---

[5] In *Ridgway*, a plaintiff attempted to invoke constructive fraud because the service member changed his beneficiary designation to have his proceeds be devised by law to his new wife, whereas his previous wife had a divorce decree in place prior to the new marriage that entitled her children to the service member's life insurance policies that were outstanding at the time of divorce, one of which was the SGLI policy. The Court held that "Federal law and federal regulations bestow upon the service member an absolute right to designate the policy beneficiary. That right is personal to the member alone. . . [] only Sergeant Ridgway had the power to create and change a beneficiary interest in his SGLIA insurance. By exercising that power, he hardly can be said to have committed fraud[,]" and that "to say that this type of conduct constitutes constructive fraud would be to open the policy proceeds to a suit by any commercial creditor, a result that would render § 770(g) nugatory." *Ridgway*, 454 U.S. at 59-60. In *McNabb*, the 9th Circuit held that the alleged failure of the military to notify a plaintiff of the change of beneficiary designation does not invalidate the beneficiary change and that such a change by the service member cannot be construed as fraud under the limited "fraud exception" that *Ridgway* posits in dicta. *McNabb*, 623 Fed. App'x at 872-73.

service member was mentally incapacitated or unduly influenced at the time of the change of the beneficiary designation. *Stevens v. Stevens*, No. 2018-935, 2021 Fla. Cir. LEXIS 1359 at *3-4; 4 n.2 (Fla. Cir. Ct. May 21, 2021) (citing *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240 (10th Cir. 2001)).

Here, Plaintiff proposes two scenarios to invalidate Kevin Singleton's beneficiary elections: first, that Brooks Defendants unduly influenced a severely incapacitated Kevin Singleton to change his beneficiary designation in April of 2014; and second, that the beneficiary change of April 2014 was not signed by Kevin Singleton, and that his signature was forged. The Court will address each scenario in turn.

### i. Incapacity and Undue Influence

First, as to Plaintiff's allegations that Kevin Singleton was too mentally incapacitated to appreciate his change in beneficiary designation, or that the Brooks Defendants were able to unduly influence him because of his fragile mental condition, the Court must determine what the standard is for mental incapacitation and undue influence. While the question of mental capacity is not addressed in SGLIA, federal common law holds that there is a presumption of mental capacity in the insurance context. *See Rice*, 260 F.3d at 1247-48 ("The fact that a policy was issued raises the presumption that the insured was of sound mind at the time the contract was entered into, and clear proof is required to establish that he or she lacked sufficient capacity . . . We also draw support from the Department of Veterans Affairs, which in administrative proceedings involving the validity of a change in beneficiary applies a general but rebuttable presumption that every testator possesses testamentary capacity. 38 C.F.R. § 3.355(c).") (internal citations and quotations omitted). Similarly, with regard to undue influence, it is

> generally defined as influence that is sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's

> inclination and free will. A showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document. Courts have looked at a number of factors to determine whether undue influence has been exerted in a given case, including the physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the "unnaturalness" of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of the benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor.

*Calmon-Hess*, 904 F. Supp.2d at 394 n.2, (noting that this standard conforms with New Jersey's definition) (quoting *Rice*, 260 F.3d at 1250; *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) (fashioning a federal common law rule governing when undue influence invalidates a change of beneficiary in the insurance context)).

Here, while Plaintiff asserts that Kevin Singleton was incapacitated by his cancer in 2014, Plaintiff's own documents in support of her summary judgment motion indicate that while Kevin Singleton was significantly physically impaired by his cancer, he was not impaired mentally. Crucially, Kevin Singleton's physician indicated that he was "class 1—patient is able to function under stress and engage in personal relations (no limitations)" under "Mental/Nervous Impairment" in his evaluation. *Opp.* at Ex. N. This examination form was dated August 27, 2014, several months after Kevin Singleton changed his beneficiary election form to designate Defendant Tianna Singleton. *Id.*

Further, there is no evidence provided in the record to suggest that Brooks Defendants exercised undue influence over Kevin Singleton. As the Court noted above, while Kevin Singleton was physically compromised from his battle with cancer, he was considered unimpaired mentally by his evaluating physician. Moreover, Plaintiff does not point to any facts to demonstrate the

recognized indicia of undue influence. Plaintiff has not adduced any facts to sugguest Kevin Singleton acted against his own free will, such as if the Brooks Defendants restricted Kevin Singleton's contact with other people, had control of his finances, or that Brooks Defendants' possessed the document conferring the benefit.[6] There is no evidence in the record of the Brooks Defendants threatening or coercing Kevin Singleton to persuade him to change his SGLI beneficiary designation. All of Plaintiff's assertions regarding Kevin Singleton's state of mind and Brooks Defendants' interactions with Kevin Singleton are entirely speculative because she has no independent basis for any of her claims: she was not in contact with Kevin Singleton during the relevant time frame, nor had she ever met Brooks Defendants. *See* Opp. at Ex. A. Chardonnay-Singleton Tr. at 34:16-19; 70:14-19; 71:18-24; 78:22-25; 79:1-11; 98:10-17; 108:2-12.

Further, Plaintiff asserts that Kevin Singleton naming Defendant Tianna Singleton as the sole beneficiary of the SGLI policy is an "unnatural" gift because her husband would never leave her and their severely handicapped daughter without support. *See* Opp. at Ex. A. Chardonnay-Singleton Tr. at 75:6-19; 77:10-17. The Court notes that "unnaturalness" in this context means "grossly unreasonable," or so atypical as to arouse suspicion. *See Belcher v. Somerville*, 413 S.W.2d 620, 622 (Ky. 1967) ("a will unnatural in its provisions, in fact, grossly unreasonable . . . Mrs. Belcher had known the testatrix for only 66 days. She was not a natural object of Mrs. Heller's affection."). But Kevin Singleton's designation is not grossly unreasonable or atypical given his relationship with Defendant Tianna Singleton, who he identified as his daughter on multiple forms, and was designated as her parent on her birth certificate. *See* Navy Def.'s Motion for Summary Judgment at Exs. F, H, I, K. Plaintiff's own testimony suggests that Kevin Singleton had a longstanding relationship with Defendant Tianna Singleton, who viewed Kevin Singleton as

---

[6] The Court notes that there is testimony in the record that asserts only Kevin Singleton and a witness were present at the signing of the election form at issue. *See* Brooks Def.'s Motion for Summary Judgment at Ex. D. .

her father, and interacted with him regularly.  *See* Opp. at Ex. A Chardonnay-Singleton Tr. at 36:15-21; 96:8-12; 97:3-15; 103:20-25; 104:1-6.[7]

Simply "showing [] mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document." *Rice*, 260 F.3d at 1250 (internal citation omitted).  At best, Plaintiff's assertions point to potential motive and possible opportunity, but lack any factual basis sufficient to demonstrate that the Brooks Defendants actually exerted any influence over Kevin Singleton during the relevant timeframe.  Therefore, when considering the myriad of factors to determine whether Kevin Singleton was unduly influenced by Brooks Defendants, the Court finds that nothing in the records supports the finding of undue influence by Brooks Defendants or incapacity on the part of Kevin Singleton.

### ii. Impersonation and Forgery

Plaintiff asserts a second scenario in her endeavor to invalidate Kevin Singleton's beneficiary designation.  She contents that "Miss Brooks or her daughter or either one of them could have marched up to the military base where he was stationed, with the use of one of her male friends or whatever, and go into the office.  They had access to all his information.  And go in there and forge the paperwork[.]" Opp. at Ex. A. Chardonnay-Singleton Tr. at 98:20-25.

Based upon a thorough review of the record, the Court notes that there are many undisputed facts that undermine the scenario of impersonation and forgery.  First, Kevin Singleton changed his beneficiary election on his SGLI policy five times before the contested change in 2014 and

---

[7] Moreover, Kevin Singleton was entitled to designate anyone, or even an entity, to receive his SLGI benefits. *Ridgway*, 454 U.S. at 54 ("'This bill permits you to leave your insurance to your church, to your college, to your best friend.  The beneficiary provision is wide open under this option.' 111 Cong. Rec. 24341 (1965).").

included Defendant Tianna Singleton on two of those prior, uncontested election forms.[8] Defendant Tianna Singleton was a designated beneficiary on Kevin Singleton's SGLI policy for seven out of eight years, from 2006 to 2014. Further, there is no evidence whatsoever in the record to support Plaintiff's contention that someone physically impersonated Kevin Singleton in 2014 aside from Plaintiff's own conjecture posited during her deposition. See Opp. at Ex. A. Chardonnay-Singleton Tr. at 98:20-25.

Moreover, the record demonstrates that the Navy's procedures were followed when the 2014 beneficiary form was submitted. There is a "strong but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Dworjan v. United States*, No. 13-2671, 2016 WL 355074 at *4 (D.N.J. Jan. 28, 2016). Here, Alan Burton Gorski stated in his deposition, "it is a professional training of the personnel clerks to accept [beneficiary forms] in person" at the naval base, where the clerk would witness the service member submit the documentation and sign for the document's receipt. *See* Opp. at Ex. B, 25:13-25; 26:1-25; 27:1-17. With regard to the identification of the service member, the clerk would either know the service member personally or use their nametag or other label on the service member's uniform to verify the individual presenting with the documents was the individual who had authority to modify such documents. *Id*. 37:4-11.

In this case, Keenan Lee Rogers ("Rogers") was the clerk who received Kevin Singleton's beneficiary change on April 26, 2014, and testified that he knew Kevin Singleton personally, and that it was Kevin Singleton who submitted the beneficiary form that day. *See* Brooks Def.'s

---

[8] The Court notes that the record contains six SGLI policy benefit election forms. The first in 1993 shows Plaintiff as principal beneficiary and Stanly Singleton (his father) as a contingent beneficiary; the second in 2002, showing just Plaintiff as the beneficiary; the third form in 2006 reflecting Defendant Tianna Singleton and Taje Singleton as beneficiaries; the fourth form in 2012 showing Defendant Tianna Singleton and Heather Farrell; the fifth form in 2013 listing only Heather Farrell; and the sixth and final form in 2014 that shows the sole beneficiary of Defendant Tianna Singleton. See Navy Def.'s Motion for Summary Judgment at Exs. E, G, H, I, J, K.

Motion for Summary Judgment at Ex. D. Rogers signed the contested beneficiary form as the Personnel Clerk, confirming that he received the form in accordance with the Navy's protocol as described by Alan Burton Gorski. See Opp. at Ex. H. The Court notes that Plaintiff attempts to contest the accuracy and veracity of Rogers' testimony on his ability to identify Kevin Singleton personally, in terms of his recall regarding specificities about Kevin Singleton's style of uniform and whether he was a smoker. *See* PR BD SMF ¶¶ 6-11. However, what is undisputed regarding Rogers' testimony is the fact that he followed the Navy's procedure in accepting Kevin Singleton's beneficiary form in person and signed the 2014 beneficiary form on that date to affirm that Naval procedures were followed, a procedure he dutifully performed thousands of times. *See* Opp. at Ex. C. Keenan Lee Rogers' Tr. 58:6-17; *id.* at Ex. H. Plaintiff's efforts to create issues of fact in Rogers' testimony related to his memory of Kevin Singleton misses the mark, given Rodgers' adherence to procedure and his signature affirming such on the form itself. Whether Rogers' can recall the type of camo Kevin Singleton wore on that day eight years prior is of no moment and is not sufficient to raise a dispute of material fact.

Lastly, the Court notes that Plaintiff's theory of impersonation stems from her belief that Kevin Singleton's signature on the 2014 beneficiary form was forged. The Parties do not point the Court to any Third Circuit precedent regarding the issue of suspected forgery involving an SGLI policy, nor can this Court find any accounts similar to the instant case within this Circuit, but both Parties discuss *Feehan v. Feehan*, which involves a dispute over whether a signature was forged on a Veteran's General Life Insurance policy, which was created following the service member converting his SGLI policy. *Feehan v. Feehan*, No. 9-7016, 2010 WL 3734082 (S.D.N.Y. Jul. 26, 2010).[9] The Court finds that the Second Circuit's analysis in *Feehan* regarding forgery to

---

[9] Both a Veteran's General Life Insurance policy and an SGLI policy require any beneficiary change to be made in writing and received by the appropriate office prior to the death of the service member, and both policies are governed

be persuasive. In particular, the analysis in *Feehan* is similar to the analysis the Third Circuit applies to lay witness testimony, in that such a witness must satisfy both Federal Rules of Evidence 701 and 901(b)(2). *See Feehan*, 2010 WL 3734082 at *10; *United States v. Clouden*, 534 Fed. App'x 117, 122 (3d Cir. 2013). The Federal Rules of Evidence permit lay witnesses to give testimony that is rationally based on the witness' perception, helpful to clearly understanding the witness' testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. *Id.* Further, the lay witness' opinion must be based on familiarity with the handwriting in question, a familiarity "that was not acquired solely for the purposes of the litigation at hand." *See Feehan*, 2010 WL 3734082 at *10; Fed. R. Evid. 901(b)(2).[10]

Plaintiff's attempt to cast Kevin Singleton's signature as fraud cannot be substantiated based on the facts within the record. Plaintiff points to two sources that support her belief that Kevin Singleton's signature was forged. First, she submits that her first attorney, Wallace Vitez, originally told her that the signature on the 2014 beneficiary election form was forged. *See* Opp. at Ex. A. Chardonnay-Singleton Tr. at 77:18-25; 78:1-12. Second, Plaintiff points to the Preliminary Inquiry Report from the Office of the Inspector General that notes "a marked difference in the appearance of BMC Singleton's signature on the most recent form," but also asserts that their office did not have personnel with experience or certifications in the field of

---

by the same statutory beneficiary designation provisions that "are to be interpreted strictly." *Id.* at *7-8; *see* 38 U.S.C. § 1970.

[10] "Fed. R. Evid. 901 Authenticating or Identifying Evidence

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only—not a complete list—of evidence that satisfies the requirement:

[. . .]

(2) Nonexpert Opinion About Handwriting. A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation."

Fed. R. Evid. 901(b)(2).

handwriting analysis to form an opinion regarding the signature. *See* Opp. at Ex. M. However, both of these sources fail to satisfy Federal Rule of Evidence 901(b)(2) and fail to raise a dispute of material fact for trial. Both Wallace Vitez's hearsay opinion and the Preliminary Inquiry Report regarding Kevin Singleton's signature were formed by non-experts, with no prior familiarity with Kevin Singleton's handwriting, and formed in the process of Plaintiff pursuing litigation regarding the beneficiary proceeds at issue in this case. *Id.* at 108:13-25; 109:1-25; 110:1-21; 111:11-22; Opp. at Ex. M. Here, Plaintiff has not provided any competent evidence or testimony to support her contention that Kevin Singleton's signature was forged.[11]

"[T]o survive summary judgment, the party contesting the signature's validity must submit sufficient evidence to allow a reasonable juror to conclude that those arguments have merit," *Feehan*, 2010 WL 3734082, at *9. Here, Plaintiff has not provided even a scintilla of evidence to allow a reasonable juror to conclude that any of Plaintiff's contentions have merit. Rather, Plaintiff has only provided her own testimony to support her claims in her effort to create a factual dispute. Many of her beliefs do not stem from her own personal knowledge, but from what she has heard from others, and is entirely unsupported by any independent evidence. "[S]ummary judgment is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined . . . by other credible

---

[11] To demonstrate a disputed material fact, Plaintiff would need to either provide the Court with an expert opinion that confirms her belief of forgery or provide a witness to attest to Kevin Singleton's signature that would satisfy the Federal Rules of Evidence. For example, the plaintiff in *Feehan* was well acquainted with her son's signature prior to litigation and possessed various authenticated legal documents signed by her son. *See Feehan*, 2010 WL 3734082 at *10 ("Plaintiff has made a sufficient showing that she meets that standard. Her knowledge of her son's handwriting was acquired before this litigation began, through their mother-son relationship and her familiarity with other documents that he had signed. She has submitted copies of several such documents, showing that she had an opportunity to become familiar with his handwriting before his death."). In contrast to the plaintiff in *Feehan*, Plaintiff herself has been blind since 2004, and therefore has not seen for herself the alleged difference between Kevin Singleton's signatures, nor does she offer anyone else who could testify to the authenticity of Kevin Singleton's signature in accordance with the Federal Rules of Evidence. *See* Opp. at Ex. A. Chardonnay-Singleton Tr. at 74:7-14; 76:23-25; 77:1.

evidence," and a "district court [is] not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *See Thomas v. Del. State Univ.*, 626 Fed. App'x 384, 389 n.6 (3d Cir. 2015). Simply put, there is no competent evidence before this Court to invalidate Kevin Singleton's SGLI beneficiary designation.

The Court acknowledges the harrowing efforts of Plaintiff to ascertain the details of her husband's passing and dealing with the difficulties and consequences of his choices. However, as numerous courts from all over the country have found, and as the Court finds here, the straightforward application of a properly executed SGLI Election Form is what is mandated by Congress and federal law, regardless of the inequities such a path may wrought. *See Mixsooke v. Prudential Life Ins. Co.*, No. 12-170, 2013 WL 600237 at *3-4 (D. Alaska, Feb. 15, 2013); (citing *Ridgway v. Ridgway*, 454 U.S. 46, 62-63 (1981)) (noting that both in *Mixsooke* and *Ridgway*, the courts "enforced a SGLI Election Form in circumstances where the competing claimant was a very sympathetic party with substantial equity on her side," because of Congress' scheme that establishes the service member's control of designating his or her own beneficiary). Thus, the Court must grant summary judgment in favor of the Brooks Defendants.

## B. Navy Defendant's Motion for Summary Judgment (ECF No. 74)

Next, the Court turns to the question of whether the Navy violated 38 U.S.C. § 1967(f) when it failed to notify Plaintiff of the changes in beneficiary on Kevin Singleton's SGLI policy. Ultimately, even if the Court were to determine that the Navy failed to notify Plaintiff regarding the beneficiary change, the lack of notification would not invalidate Kevin Singleton's change of beneficiary. 38 U.S.C. § 1967(f) states, in pertinent part,

> (3) In the case of a member who is married and who is insured under this section, if the member makes a designation under section 1970(a) of this title [38 USCS § 1970(a)] of any person other than the spouse or a child of the member as the beneficiary of the member for any amount of

16

insurance under this subchapter [38 USCS §§ 1965 et seq.], the Secretary concerned shall notify the member's spouse, in writing, that such a beneficiary designation has been made by the member, except that such a notification is not required if the spouse has previously received such a notification under this paragraph and if immediately before the new designation by the member under section 1970(a) of this title [38 USCS § 1970(a)] the spouse is not a designated beneficiary of the member for any amount of insurance under this subchapter [38 USCS §§ 1965 et seq.].

(4) A notification required by this subsection is satisfied by a good faith effort to provide the required information to the spouse at the last address of the spouse in the records of the Secretary concerned. **Failure to provide a notification required under this subsection in a timely manner does not affect the validity of any election specified in paragraph (1) or (2) or beneficiary designation specified in paragraph (3).**

38 U.S.C. § 1967(f)(3)-(4) (emphasis added); *see McNabb*, 623 Fed. App'x at 872 ("Mrs. McNabb's claim against Prudential starts from the premise that the February 2012 beneficiary change was invalid. By statute, the Army's alleged failure to provide the notice required by § 1967(f)(3) 'does not affect the validity of any . . . beneficiary designation.'").

Further, the beneficiary changes made by Kevin Singleton would not have triggered the notification requirement of 38 U.S.C. § 1967(f) because it requires notification of the spouse only "if the member makes a designation under section 1970(a) of this title [38 USCS § 1970(a)] of any person other than the spouse or a child of the member as the beneficiary of the member[.]" 38 U.S.C. § 1967(f)(3). The first beneficiary change that dropped Plaintiff from coverage included Plaintiff's and Kevin Singleton's daughter, Taje Singleton, as a beneficiary, as well as Defendant Tianna Singleton, who was also listed as a daughter, which occurred in January 2006. *See* Opp. at Ex. E. The second beneficiary change occurred in March of 2012, where Kevin Singleton listed Defendant Tianna Singleton and Heather Farrell as beneficiaries, both listed as "daughter" on the form. *Id*. at Ex. F. The third beneficiary change occurred in February of 2013, where Kevin

Singleton listed Heather Farrell as the sole beneficiary, listing her as his daughter. *Id.* at Ex. G.

Finally, in April of 2014, Kevin Singleton changed his SGLI beneficiary for the last time, leaving

all of its proceeds to Defendant Tianna Singleton, who he listed as a daughter. *Id.* at Ex. H. Each

of these changes ostensibly only included either the spouse or child of the member, which would

not have required notice pursuant to 38 U.S.C. § 1967(f)(3).

Plaintiff asserts that Defendant Tianna Singleton would not count as a daughter under the

definition for "child" provided by 38 U.S.C. § 1965. The statute defines the term "child" as:

> a legitimate child, a legally adopted child, an illegitimate child as to the
> mother, or an illegitimate child as to the alleged father, only if (A) he
> acknowledged the child in writing signed by him; or (B) he has been
> judicially ordered to contribute to the child's support; or (C) he has been,
> before his death, judicially decreed to be the father of such child; or (D)
> proof of paternity is established by a certified copy of the public record of
> birth or church record of baptism showing that the insured was the
> informant and was named as father of the child; or (E) proof of paternity is
> established from service department or other public records, such as school
> or welfare agencies, which show that with his knowledge the insured was
> named as the father of the child.

38 U.S.C. § 1965(8). The Court notes that the Navy asserts that Defendant Tianna Singleton is a

child pursuant to this statute both under subsection (A), because Kevin Singleton identified

Defendant Tianna Singleton as his daughter in the SGLI Election Forms, a writing signed by him,

at least twice prior to the contested election change in 2014, as well as under subsection (E) where

Defendant Tianna Singleton's birth certificate shows Kevin Singleton is listed as a parent. *See*

Brooks Def. Motion for Summary Judgment at Ex. A. The Court agrees and understands the

provision to encompass Defendant Tianna Singleton as Kevin Singleton's child for the purposes

of 38 U.S.C. § 1965(8).

38 U.S.C. § 1965(8) does not require anything additional or particular other than "a

writing" signed by the child's father to satisfy subsection (A), and the SGLI Election Form is a

"writing" that is signed by the service member in this instance.[12]  Plaintiff asserts that Kevin Singleton's own designations on his SGLI Election forms are not sufficient, and that only the children identified and tracked by the Navy's Defense Enrollment Eligibility Reporting System ("DEERS") should be considered as a "child" of the member, *see* Opp. at 14.  Nevertheless, the notification provision does not require the Navy to keep track of each individual service member's elected beneficiaries and send out notices any time there is a difference between DEERS and a particular member's beneficiary designation.  *See Mixsooke*, 2013 WL 600237 at *3 (holding that the notification provision does not require the Secretary to keep track of a service member's marital status or family structure and send out notices any time there is a change subsequent to the execution of the SGLI Election Form).

Plaintiff further asserts that the Navy's internal policy from the Naval Military Personnel Manual 1741-20 ("1741-20") requires notification whenever a service member does not designate their spouse as a beneficiary on the SGLI policy.  The Navy asserts that its internal policies are not cognizable to this Court because such policies are not "applicable to the public."  Reply at 7.

The Court notes that Plaintiff provides the 1741-20 issued in 2003 and 2013, and the Preliminary Inquiry Report of the Office of the Inspector General to support her assertions.  *See* Opposition at Exs. I, J, M.  The 1741-20 issued in 2003 at Exhibit I does not contain any notification requirements therein: section 14 outlines the procedures for choosing a beneficiary, which encourages service members to designate family members or parents for their proceeds, but that "[u]nder no circumstances should a member be compelled to designate a beneficiary other than one of the member's own choosing."  *See* Opp. at Ex. I, Sec. 14(b).  In contrast, the 1741-20 issued in 2013 does include spousal notification: "Members may designate any person(s) as their

---

[12] The Court notes that this rationale would also apply to Heather Farrell as well.

beneficiary(ies). If the member is married and designates any individual other than his or her spouse, the spouse shall be notified in writing (see paragraph 19 of this article)." *Id.* at Ex. J, Sec. 4. The Preliminary Inquiry Report from the Office of the Inspector General notes in its "Summary of Allegations and Results of Preliminary Inquiry" that "the requirement for notifying the spouse was instituted by law in 2005-2006; however, there was a delay in the Navy promulgating how the notification was to be done." *Id.* at Ex. M.

Notably, the beneficiary change that would have triggered the initial notice for Plaintiff occurred on January 21, 2006. Therefore, it is unclear from the record if the beneficiary change that dropped Plaintiff from Kevin Singleton's SGLI policy occurred before or after the Navy's internal policies and procedures were updated to effectuate spousal notification. It is also unclear if the spousal notification as written in the 1741-20 issued in November of 2013 would have required the Navy to alert Plaintiff that Kevin Singleton changed his election to Defendant Tianna Singleton in April of 2014, given that Plaintiff was previously removed from the election form eight years prior. The November 2013 1741-20 does not indicate whether spousal notification was required each and every time a member designated an individual other than his or her spouse, or whether such notification was required only upon a member's initial election of beneficiaries. The Court notes that under section 4(b), which discusses the procedure when a member updates coverage or changes beneficiaries, offers no discussion or reference to the spousal notification requirement. *Id.* at Ex. J.

More importantly, as noted the Report by the Inspector General's Office and as reflected in 38 U.S.C. § 1967(f)(4), "the law [does] not provide for any remedy or recourse should the required notification not be done." *Id.* at Ex. M. Even if this Court found that Plaintiff should have been notified of the beneficiary change that occurred in 2014, Plaintiff has not pointed to any

right or legal remedy to suggest that this Court could hold the Navy to account for failing to follow its own internal policies. This Court acknowledges that there is a "tension" here between a spouse's right to notice of a beneficiary change and the lack of any right to prevent or contest such a change, yet this tension cannot be alleviated by the Court: "[t]he tension no doubt reflects a legislative balancing of competing interests. Any adjustment to that balance must likewise come from Congress." *McNabb*, 623 Fed. App'x at 873. Thus, this Court must grant summary judgment in favor of Navy Defendants.

### C. Motions to Seal (ECF Nos. 77 & 81)

Requests to seal are governed by New Jersey Local Civil Rule 5.3, which requires that a request to seal must be presented by motion, and that the motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

Although there is a well-established "common law public right of access to judicial proceedings and records," In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001), "[a]n order to overcome this presumption of a public right of access, the movant must demonstrate that 'good cause' exists for the protection of the material at issue." *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Specifically, the movant must prove that the information is confidential in nature and that allowing the general public to access the information will cause a specific and serious injury. *See*

21

*Pansy*, 23 F.3d at 786. "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Id.* (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

Both Navy Defendant and Plaintiff seek to seal several Exhibits and redact certain personal information from the record.  Navy Defendant seeks to seal Kevin Singleton's Dependency Application/Record of Emergency Data, and Taje Singleton's and Tianna Brook Singleton's birth certificates, which were filed under temporary seal as Exhibits B, D, and F.  Plaintiff seeks to seal Exhibits A, and K through R, which includes sensitive information revealed during Plaintiff's deposition, Kevin Singleton's death certificates, redactions to the Navy's Preliminary Inquiry Report, excerpts of Kevin Singleton's medical records, and Plaintiff's marriage license.  Because these requests to seal involve the same kinds of nonpublic, personal, and third-party information, and neither request is opposed, the Court will address both motions below.

The Court must review the pending motions against the four factors as promulgated in L. Civ. R. 5.3(c)(2).

First, both motions clearly describe the nature of the materials at issue, thus meeting the first prerequisite, noting that these documents, while necessary for the Court's review to resolve the Motion for Summary Judgment, contain sensitive personal identifying information.  *See generally* Mot. Seal, Decl. Tasha M. Bradt; Mot. Seal, Decl. Christine M. Fox.

Second, both motions assert the legitimate private and public interests which warrant the relief sought, such as to protect the privacy of nonparties and to prevent disclosure of personal identifying information.  *Id.*

Third, both motions assert the clearly defined and serious injury that would result if the relief sought is not granted, the exposure of sensitive information to the public that is normally not available, *id.*; and

Fourth, the Court agrees that there is no less restrictive alternative to filing the information requested under seal because records are entirely comprised of sensitive information. Further, the Court has reviewed the excerpts that Plaintiff requests redactions be applied and agree that only the information that is sensitive and personally identifying would be restricted from public view and would not impede the public from understanding the legal issues, factual circumstances, and the issues of dispute in the instant case. *See* Mot. Seal, Decl. Christine M. Fox. The Court also finds that there is "good cause" to protect such sensitive, personal information from disclosure. *See Securimetrics, Inc.*, 2006 WL 827889, at *2; *Pansy*, 23 F.3d at 786. The fourth prerequisite is met, and thus both Motions to Seal are granted in their entirety.

## V.     CONCLUSION

For the reasons set forth above, Brooks Defendants' Motion for Summary Judgment is **GRANTED**; Navy Defendant's Motion for Summary Judgment is **GRANTED**, and both Plaintiff's and Navy Defendant's Motions to Seal are **GRANTED**. An order consistent with this Opinion will be entered.

October 31st, 2024

KAREN M. WILLIAMS, U.S.D.J.